UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

METROPOLITAN LIFE INSURANCE COMPANY,

                              Plaintiff,                    **REPORT**
              v.                                            **and**
                                                            **RECOMMENDATION**

ANNE M. JACQUES and CRAIG JACQUES                          **06-CV-444A(F)**

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CRAIG JACQUES,
                              Counter and Cross-Claimant,
              v.

ANNE M. JACQUES,

                              Cross-Defendant.
_____

APPEARANCES:         HODGSON RUSS LLP
                     Attorneys for Plaintiff
                     CATHERINE GRANTIER COOLEY, of Counsel
                     The Guaranty Building, Suite 110
                     140 Pearl Street
                     Buffalo, New York 14202-4040

                     MUEHE & MUEHE
                     Attorneys for Defendant and
                     Counter-Claimant Craig Jacques
                     GEORGE F. NEWTON, of Counsel
                     48 N. Main Street
                     Canandaigua, New York 14424

                     CHRISTOPHER S. CIACCIO, ESQ.
                     Attorney for Defendant and
                     Cross-Defendant Anne M. Jacques
                     30 W. Broad Street
                     Suite 400
                     Rochester, New York 14614

## JURISDICTION

This case was referred to the undersigned by the Honorable Richard J. Arcara on August 2, 2006 for a report and recommendation on all dispositive motions.  (Doc. No. 5).  The matter is presently before the court on Defendant Craig Jacques's motion for summary judgment, filed on February 15, 2008.   (Doc. No. 25).

## BACKGROUND

Plaintiff, Metropolitan Life Insurance Company ("Plaintiff" or "MetLife") brought this interpleader action, pursuant to 28 U.S.C. § 1331, 29 U.S.C. § § 1101-1461, the Federal Employment Retirement Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and Fed.R.Civ.P. 22(a) ("Rule 22(a)"), on July 6, 2006, requesting permission to deposit, with the court, funds from decedent's, Steven Jacques ("Steven" or "Steven Jacques") life insurance policy ("the Life Plan") created under a benefit plan established by Steven's former employer, Eastman Kodak Company ("Kodak") and covered by ERISA, and another insurance policy described as the Kodak Group Universal Plan Life Insurance ("the GUL Plan"), a plan not subject to ERISA, pending the court's determination of whether Anne Jacques ("Anne"), Steven's widow or Craig Jacques ("Craig"), Steven's brother, is the correct legal beneficiary of Steven's life insurance policies as established under the Life Plan and the GUL Plan ("the policies").  Complaint ¶¶ 20-26. Exhibit A to the Complaint is the beneficiary designation form Steven completed and submitted to Kodak in 1992 which designated Craig and Brian Jacques, Steven's then infant son, ("Brian"), as co-beneficiaries under the policies ("Complaint

2

Exh. A"); Exhibit B is the Life Insurance Claim Form completed by Anne seeking a one-half benefit under the plans ("Complaint Exh. B"); Exhibit C is the Life Insurance Claim Form completed by Brian's  mother, Debra Waite, ("Complaint Exh. C"), seeking payment of his one-half benefit under the plans; and Exhibit D is a letter from George Newton, Craig's attorney, to MetLife's Claims Department advising MetLife that the parties, Anne and Craig, cannot agree on the proper beneficiary under the policies, *i.e.*, Anne or Craig, is, and requesting that MetLife proceed with filing an interpleader action. ("Complaint Exh. D").  In the instant Rule 22(a) interpleader action, MetLife seeks to be exonerated from any liability upon MetLife's payment to the correct beneficiary as determined by the court of the full amount of the death benefits which remain available under the policies, a one-half benefit having been paid to Brian, and requested an award of costs, disbursements and attorneys' fees reasonably incurred in bringing this action.  Complaint ¶ 26.  MetLife is the "claims fiduciary" of the Life Plan and "administers claims for the GUL Plan."  Complaint ¶ 10; Craig Jacques's Answer ¶ 1(admitting Complaint ¶¶ 1-12); Ann Jacques's Answer ¶ 2 (asserting insufficient knowledge upon which to admit or deny, *inter alia*, Complaint ¶ 10).

In his Answer and Counterclaim against MetLife, and his Cross-Claim against Anne, Craig requested that the court deny MetLife its request for attorneys' fees, and instead grant Craig an award of attorneys' fees.  (Craig Jacques's Answer at 4) (Doc. No. 4).  Anne, in her answer, also requests costs and disbursements.  (Doc. No. 9) (Anne Jacques's Answer at 2).  On September 25, 2006, the parties filed a Stipulation and Proposed Order with the court, dismissing and discharging MetLife of liability from this action upon MetLife depositing the death benefit available for payment under the

3

Life Plan and GUL Plan into the court's registry (Doc. No. 13) which was granted by

Chief Judge Richard J. Arcara on September 26, 2006.  (Doc. No. 14).

On February 15, 2008, Craig filed the instant motion for summary judgment (Doc.

No. 25) ("Defendant Craig Jacques's motion") seeking an award of the remaining

balances of Stevens' death benefits under the policies deposited with the court by

MetLife with accumulated interest, along with a memorandum of law in support

("Defendant Craig Jacques's Memorandum"), the Affidavit of George F. Newton, Esq.

("Newton Affidavit"), a summary of the insurance benefits ("Defendant Craig Jacques's

Exh. A") available under the Life Plan and GUL Plan, a 1992 Beneficiary Designation

Form Designating Craig and Brian Jacques, as Steven's beneficiaries under the Life

Plan and GUL Plan ("Defendant Craig Jacques's Exh. B"), the Print-Out of Kodak's

PRIDE computer screen which listed Anne and Brian as Steven's beneficiaries as of

1995 ("Defendant Craig Jacques's Exh. C"), and the depositions of Kodak employees

Deidre Irvine ("Irvine Deposition") and John Littwitz ("Littwitz Deposition"), Craig ("Craig

Jacques's Deposition") and Anne ("Anne Jacques's Deposition") ("Defendant Craig

Jacques's Exh. D"). Ruth Elmer, Stephen's sister, was designated, in Defendant Craig

Jacques's Exhibits B and C, the contingent beneficiary under the policies.  Brian was

designated as one of the two primary beneficiaries in both exhibits.

Anne filed a Memorandum in Opposition to Defendant Craig Jacques's motion

(Doc. No. 27) ("Defendant Anne Jacques's Memorandum") on March 4, 2008, along

with the depositions of Irvine, Littwitz, Craig, and Anne ("Defendant Anne Jacques's

Memorandum, Exh. A") and the Kodak PRIDE computer screen print-out identifying

Anne and Brian as primary beneficiaries of the policies ("Defendant Anne Jacques's

4

Memorandum Exh. B."). Anne filed her Response in Opposition to Craig's motion on March 4, 2008 (Doc. No. 28) ("Anne Jacques's Response") and, on April 10, 2008, Craig filed a Reply in Support of Defendant Craig Jacques's motion (Doc. No. 29) ("Defendant Craig Jacques's Reply"). At the court's request, MetLife filed, on January 21, 2009, a letter (Doc. No. 30) explaining the basis for the court's subject matter jurisdiction over MetLife's Rule 22(a) interpleader action. Oral argument was deemed unnecessary. Based on the following, Defendant Craig Jacques's motion should be DENIED; *sua sponte*, summary judgment should be GRANTED to Defendant Anne Jacques; MetLife's request for costs and attorney's fees should be DENIED, and Craig Jacques's and Anne Jacques's request for costs and attorney's fees should be DENIED.

## FACTS[1]

Steven Jacques was employed by Kodak and a participant in the Kodak Life Insurance Plus Plan ("the Life Plan"), an employee benefit plan covered by ERISA, and the Kodak Group Universal Life Insurance Plan ("the GUL Plan"), a life insurance benefit plan not covered by ERISA until February 26, 2005, when Steven committed suicide. Complaint ¶¶ 8, 14; Craig Jacques's Answer ¶ 1; Anne Jacques's Answer ¶ 3. MetLife is the Life Plan and GUL Plan insurer and administers claims for the GUL Plan. According to the policies, a life insurance plan participant may change his or her beneficiary

---

[1] Taken from the pleadings and papers filed in this action.

> . . . at any time without [the] beneficiary's consent by
> contacting [Kodak's] Human Resources or the Kodak
> Benefits Center for Basic and company-paid coverage and
> MetLife for Optional coverage and completing the proper
> forms.  A new . . . beneficiary designation will automatically
> cancel and replace all previous . . . beneficiary designations.
> When Kodak or MetLife receives notice of the changes, it will
> take effect as of the date [the participant] signed the form
> even if [the participant] die[s] between the time [he or she]
> sign[s] the form and the time it is received by Kodak.

Complaint ¶ 9; Defendant Craig Jacques's Exh. A (bracketed material added).

Exhibit A to Defendant Craig Jacques's motion describes the procedure by which

beneficiaries under the Life Plan and GUL Plan may be changed.  Newton Affidavit ¶ 2.

Although the procedure refers to providing such notice to both Kodak and MetLife, a

change in a participant's beneficiary designation is not effective until the requested

change using the change in beneficiary form, provided by Kodak, is completed by the

employee participant and received by Kodak, a fact not disputed by the parties.  Irvine

Deposition at 18, 21-22, 31, 50-51.[2]  Steven's beneficiaries under the Life Plan are

entitled to share equally a $50,000 death benefit ("Life Plan Benefit"), while under the

GUL Plan, the beneficiaries are each entitled to one-half of the $194,000 death benefit.

("GUL Plan Benefit").  Complaint ¶ 11; Defendant Craig Jacques's Answer at 1 ¶ 1;

Defendant Anne Jacques's Answer at 1 ¶ 2.

On February 4, 1992, Steven completed and submitted an Insurance Enrollment

and Beneficiary Designation Form, designating Craig and Brian as co-equal, primary

---

[2] References are to pages of the transcript of the depositions of Deidre Irvine ("Irvine Deposition at
___"), John Littwitz ("Littwitz Deposition at ___"), Craig Jacques ("Craig Jacques Deposition at _____"),
and Anne M. Jacques ("Anne Jacques Deposition at _____"), conducted on July 18, 2007, filed in this case
as Defendant Craig Jacques's Exh. D and Defendant Anne Jacques's Memorandum Exh. A.

beneficiaries of Steven's Life Plan and GUL Plan and Ruth Elmer, Steven's sister, as a

contingent beneficiary under each policy.  Complaint Exh. A; Defendant Craig Jacques's

Exh. B.  Steven was unmarried when he made this designation, upon commencing

employment with Kodak, and his son, Brian, was a three-year old minor child.  Craig

Jacques Deposition at 85.  Brian's mother, Debra A. Waite ("Waite"), did not have

primary care of Brian at this time.  *Id.*  On June 10, 1994, Steven married Anne.  Anne

Jacques's Deposition at 96.  Kodak's records indicate that sometime prior to July 13,

1995, its employee benefits office received, by a telephone call or letter from Steven, a

request that  Kodak change Steven's coequal primary beneficiaries on the policies from

Craig and Brian to Anne and Brian.  Defendant Craig Jacques's Motion Exh. C; Irvine

Deposition at 29, 30-31, 63.  Irvine testified she could not determine by referring to the

Kodak PRIDE computer system record, used by Kodak to process and record all

transactions related to employee benefits including the policies, relating to Steven's

benefits whether Steven made this request by letter or by telephone call, only that

Steven made the request.  Irvine Deposition at 63.  Irvine was unable to testify whether

the request to change Steven's primary beneficiaries for the policies was a general

request that Kodak change his primary beneficiaries to Anne and Brian or, more

specifically, a request for the Change of Designated Beneficiaries Form required by

Kodak to effect such a change.  Irvine Deposition at 30-31, 34, 36.  However, Irvine

testified that, in 1995, when Kodak received a request to change an insured's

designated beneficiaries on an employee life insurance plan, Kodak would send a

beneficiary designation form to the insured to complete and return to Kodak to

effectuate the change.  *Id.* at 34, 37.  According to Irvine, the Kodak employee benefits

call center representative who received such a request would make an entry in the PRIDE system record for the employee, and designate the request as "pending" in the PRIDE system. *Id.* at 51. The change in beneficiaries becomes effective under the policies when the signed form is completed and returned to Kodak, at which time the "pending" designation is also removed from the PRIDE system record. *Id.* at 37, 51.

According to Craig, Steven and Anne's marriage was intact from its beginning in 1994 and Steven desired to have children with Anne until the last few years of their marriage. Craig Jacques's Deposition at 92. Anne and Steven separated in November 2004 without a formal separation agreement. Anne Jacques's Deposition at 105-08. Following Steven's death, Anne, on April 21, 2005, submitted a life insurance benefit claim to Kodak seeking a one-half share of the benefits under the Life Plan and the GUL. Complaint Exh. B. On March 21, 2005, Waite submitted a life insurance claim on behalf of Brian as the undisputed coequal beneficiary under both plans. Complaint ¶ 18; Complaint Exh. C; Anne Jacques's Answer ¶ 2; Craig Jacques's Answer ¶ 2. Craig, on May 1, 2006, advised MetLife that the proper beneficiaries of the remaining one-half of the benefits under the plans, *i.e.,* between Anne and Craig, was disputed. Complaint Exh. D. As there was no dispute that Brian was entitled to one-half of the benefits under the Life Plan and GUL Plan, Brian was paid these sums on April 3, 2006 by MetLife. Complaint ¶ 18; Defendant Craig Jacques's Motion Exhs. B, C.

Kodak requires employee insurance policy owners like Steven, who may call Kodak to request a beneficiary change, to provide certain information, such as their name, employee insurance plan number, Social Security number, and sometimes their address and date of birth, in order to verify the identity of the caller. Irvine Deposition at

8

30-31.  Irvine acknowledged that anyone having such information could call and request to change beneficiaries, but testified such changes do not become effective until a signed form is returned by the employee participant and insured to Kodak.  *Id.* at 18, 21-22, 31, 37.  No evidence in the record definitively indicates whether Steven's beneficiary change request was received by Kodak in 1995 by a telephone call or a letter from Steven.  *Id.* at 62-63.  Although Kodak maintains no records which can establish that, upon receipt of a request for change of beneficiary forms, such forms have been sent to the requesting employee, *id.* at 34, Irvine, a benefits specialist for Kodak, testified she believed the forms were forwarded to Steven following receipt of either Steven's telephone call or letter in 1995, *id.* at 8, 31, noting, as indicated, Facts, *supra*, at 7, that the usual procedure is for Kodak to send the change of beneficiary form to the policy owner after Kodak receives such a request.  *Id.* at 34.

PRIDE refers to a computer-based record-keeping system Kodak utilizes to record employee information, including the employee's name, insurance number, address, spouse, salary and designated beneficiaries on the employee's life insurance policies, including the Life Plan and GUL Plan.  Irvine Deposition at 13-14, 55, 64. As relevant, there are two computer screens used by the PRIDE system that record the status of a policy owner's beneficiary designations.  *Id.* at 58.  The call log or "pending" screen of the PRIDE database shows that a request to change beneficiaries was received by Kodak.  *Id.* at  42, 58.  The beneficiary screen shows the most current beneficiary designation on file.  *Id.* at 42; Defendant Craig Jacques's Exh. C.  However, neither PRIDE screen specifically indicates whether a change in beneficiary form has actually been received by Kodak.  *Id.* at 36.  Irvine, who has been employed by Kodak

since March 2000, Irvine Deposition at 8, had no personal knowledge about what the
procedures were in 1995 regarding placing and removing the "pending" status on an
employees file, but testified that "the process had not changed from when I became
employed," and in response to being asked whether she knew of changes made in the
process of noting and changing designated beneficiaries in the PRIDE system,
responded "no, no change."  *Id.* at 54-55, 64.   John Littwitz ("Littwitz") who, in 1995, was
employed as a benefits specialist for Kodak and, beginning in 2005, was the Benefits
Director for Kodak and served as Irvine's direct supervisor, testified that he was
unaware of any changes made "to the [Kodak] administration of [beneficiary] claims
from 1995 through 2005."  Littwitz Deposition at 76 (bracketed material added).

In 1995, when an individual employee telephoned Kodak to request changing
one or more beneficiaries on a Kodak life insurance policy, Kodak's standard procedure
was for the employee benefits call center representative receiving the request to mail
the change of beneficiary forms to the caller, input the requested changes in the PRIDE
computer screen and designate such requested changes as "pending" until the form
was correctly completed, including the employee's signature and date, and received by
Kodak for processing.  Irvine Deposition at 50-51.   When received by Kodak from the
employee, the form is sent to a benefits specialist in the Kodak benefits department to
be microfiched, but it is the call center's responsibility to delete the "pending" status of
the request, as reflected in the PRIDE system, from the screen displaying the employee
policy owner's designated beneficiaries.  *Id.* at 51.   When the call center representative
is notified by the benefits department that a signed and dated change in beneficiary
form has been received, the call center representative removes the "pending" status on

10

the PRIDE system's beneficiary designation screen.  Irvine Deposition at 51.  Thus, the absence of any indication in the PRIDE database for a particular employee like Steven that a previously noted beneficiary change request is "pending," establishes that a completed and signed beneficiary designation form, or change of beneficiary designation form, had been received by Kodak.  Irvine Deposition at 19.  This fact explains why, following Anne's request for payment of the death benefit, Irvine testified she was "so adamant on [*sic*] trying to find that [change of beneficiary] form" which Irvine believed had been received by Kodak in 1995.  *Id.* at 62 (bracketed material added).  It is technically possible to remove the "pending" status from the log call screen without having received the written change of beneficiary designation form, however, such a mistaken change would be contrary to established Kodak procedures.  *Id.* at 59-60.

As of the date Steven died, (i) there was no "pending" status on the relevant log screen for a change in insurance beneficiary in Steven's PRIDE system file, Irvine Deposition at 51, 56-57; (ii) the PRIDE system's beneficiary screen for Steven's account showed Steven's wife, Anne, and son, Brian, as primary co-beneficiaries, and Ruth Elmer as a contingent beneficiary for both policies, *id.* at 43, 47; and (iii) the PRIDE system referenced a microfiche roll and frame number where Kodak's hard copy of Steven's beneficiary designation change form could be located.  *Id.* at 20.  However, upon Irvine's investigation, the microfiche roll and frame number provided by the PRIDE system was found to reference only Steven's 1992 designation of Craig and Brian as Steven's co-equal primary beneficiaries, not the 1995 change in beneficiary form, a fact inconsistent with the PRIDE computer screen entries, *id.* at 20, and, despite a thorough

11

search, no copy of a change of beneficiary form executed by Steven in 1995 designating Anne and Brian as the new primary co-beneficiaries under the policies has been located in Kodak's records.  *Id.* at 31-32.

When Irvine searched for Steven's 1995 change of beneficiary form, she referred to the microfiche roll and frame numbers on the PRIDE beneficiary screen for Steven, but noticed that the date the 1995 change in beneficiary designation was processed by the PRIDE system did not coincide with the date on the microfiched copy of the beneficiary designation form.  Irvine Deposition at 19-20.  According to Irvine, the microfiche roll and frame showed the original beneficiary designation made by Steven in 1992, whereas the PRIDE beneficiary designation screen to Steven's account showed a change in beneficiary had occurred in 1995.  *Id.* at 20-21; Defendant Craig Jacques's Exh. C.  The names on the microfiche copy of the beneficiary form, Craig and Brian, filed by Steven with Kodak in 1992, do not match the names of those beneficiaries in the PRIDE system, Anne and Brian, based on Steven's request to change beneficiaries as recorded in 1995 in the PRIDE system.  Irvine Deposition at 20-21.  Consequently, Irvine searched Kodak's records, unsuccessfully, for the 1995 designation form by Steven's insurance policy number.  *Id.* at 20-21.  Irvine called Anne to ask if Anne had a copy of the beneficiary designation form, but Anne did not.  *Id.* at 21-22.  When Kodak receives a beneficiary designation request from an employee, Kodak sends two copies of the form to the employee along with instructions that the employee policy owner sign both forms and send them back to Kodak in a self-addressed, stamped envelope.  *Id.* at 21.  Once received by Kodak, Kodak sends a copy with a Kodak representative's signature and date stamp back to the owner for proof that change was received and

implemented by Kodak. *Id.* As of the date Irvine called Anne, Irvine believed Steven

had submitted a proper change of beneficiary form to Kodak in 1995, as noted, Facts,

*supra*, at 9-10, because there was no "pending" entry on the PRIDE computer screen

relative to Steven's change request which had been earlier noted in the PRIDE system,

based on Steven's communication with the Kodak employee benefits office. *Id.* at 22.

Irvine alerted her supervisor, Littwitz, about the discrepancy in Steven's

designated beneficiaries. Littwitz Deposition at 68-71. Littwitz and Irvine searched

Kodak's records for the 1995 change of beneficiary designation form signed by Steven,

but could not locate it. *Id.* at 72. Littwitz and Irvine then notified the plan administrator,

"who is the [Kodak] director of benefits," *id.* (bracketed material added), and MetLife. *Id.*

at 73.


**DISCUSSION**

A.    Subject Matter Jurisdiction

At the outset, the court examines whether subject matter jurisdiction extends to

MetLife's interpleader action brought pursuant to Rule 22(a). Where, as here, an

administrator, or a carrier, of an employee life insurance benefit plan, subject to ERISA,

in this case, the Life Plan, presents conflicting claims to such benefit from persons

claiming to be beneficiaries under the terms of the plan, for interpleader adjudication,

courts have found federal claim subject matter jurisdiction, under 28 U.S.C. § 1331,

over the Rule 22(a) interpleader action on two alternative grounds. First, the Second

Circuit has held that where an ERISA fiduciary,[3] such as MetLife, which the parties do not dispute administers claims for the Life Plan, requests interpleader relief to resolve conflicting claims to an ERISA plan life insurance benefit, the fiduciary's interpleader action brought under Rule 22(a) constitutes a request for equitable relief seeking to enforce the terms of the ERISA plan pursuant to 29 U.S.C. §1132(a)(3)(B)(ii), which authorizes the fiduciary to seek equitable relief to enforce the terms of the ERISA benefit plan, to award the benefits to the correct beneficiary thereby establishing federal question subject matter jurisdiction under 28 U.S.C. § 1331. *See Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 439-40 (2d Cir. 2002) (federal question subject jurisdiction exists for Rule 22(a) interpleader action by plan administrator to resolve family members' conflicting claims to ERISA plan life insurance benefits as beneficiaries pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii)) (citing *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033-34 (9th Cir. 2000)); *see also Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 277-78 (3d Cir. 2007) (Rule 22(a) interpleader action by plan fiduciary arises under 29 U.S.C. § 1132(a)(3)(B)(ii) allowing ERISA plan fiduciary to seek equitable relief to enforce plan between competing claimants, *i.e.*, make award of benefits to correct claimant); *Metro. Life Ins. Co. v. Marsh*, 119 F.3d 415, 418-19 (6th Cir. 1997) (same).

Other courts have found that the anticipatory coercive, and conflicting, actions by two or more asserted beneficiaries to a plan participant's life insurance benefits present competing claims arising under 29 U.S.C. § 1132(a)(1)(B) which authorizes actions by beneficiaries for ERISA plan benefits against a plan fiduciary, thereby presenting such

---

[3] 29 U.S.C. § 1002(21)(A) defines a fiduciary, as relevant, to include a person with "any authority or control respecting management or disposition of [a plan's] assets." (bracketed material added.)

federal law claims for judicial determination as judicial claims in the fiduciary's Rule 22(a) interpleader action.  *See Gelfgren v. Republic Nat'l Life Ins. Co.,* 680 F.2d 79, 81-82 (9th Cir. 1982) (Rule 22(a)(1) interpleader action to resolve competing beneficiary claims to participant's ERISA plan life insurance benefits properly removed to district court, as claims arising under federal law, based on beneficiaries' expected competing claims pursuant to 29 U.S.C. § 1132(a)(1)(B) which authorizes plan beneficiaries to sue ERISA fiduciary for payment of plan benefits); *Sun Life Assurance Co. of America v. Thomas*, 735 F.Supp. 730, 732 (W.D. Mich. 1990) (federal claim jurisdiction for Rule 22(a) interpleader action by ERISA fiduciary exists based on anticipated adverse claims which could have been brought as coercive actions by interpleader defendants pursuant to 29 U.S.C. § 1132(a)(1)(B)).  As the Second Circuit has recognized federal question subject matter jurisdiction is available for Rule 22(a) interpleader actions brought by fiduciaries under circumstances similar to those pleaded in the instant action, the court finds MetLife's instant Rule 22(a) interpleader action, directed to the award of the death benefit available under the Kodak Life Plan, is properly before this court under 28 U.S.C. § 1331, *see Bigelow*, 283 F.3d at 439-40 (federal court subject matter jurisdiction exists for claims arising under federal law in a Rule 22(a) interpleader action).

As to MetLife's interpleader request to adjudicate Anne and Craig's conflicting adverse claims to the death benefits under the Kodak GUL Plan, a non-ERISA plan, a fact not in dispute, the court finds that because Anne and Craig's competing claims to the GUL Plan benefits arise from the same set of facts upon which MetLife's claim for Rule 22(a)(1) interpleader relief, regarding Anne and Craig's competing claims to the remaining benefits under the Life Plan pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii), is

predicated, or Anne and Craig's anticipatory coercive adverse claims for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) as to the Life Plan, supplemental jurisdiction under 28 U.S.C. § 1367(a) provides subject matter jurisdiction over MetLife's instant Rule 22(a) interpleader action directed to Anne and Craig's competing claims to the GUL Plan benefit based on New York law.  Having found subject matter jurisdiction over this action, the court turns to the merits of Anne and Craig's conflicting claims.

B.      Merits of MetLife's Request for Interpleader Relief

        1.      Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) (citing *Anderson, supra*, at 255).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex, supra*, 477 U.S. at 322; *see Anderson, supra*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

In assessing a record to determine whether there is genuine issue of material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.  *Rattner*, *supra*, 930 F.2d at 209.

    "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (quoting Fed. R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998), *aff'd*, 269 F.3d 114 (2d Cir. 2001).  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

    2. Anne and Craig's Claims

    Anne and Craig do not dispute that the determination of the rightful beneficiary to Steven's insurance benefit under the Life Plan is governed by ERISA nor that the

court's determination as to the proper beneficiaries to the death benefit available under Steven's GUL Plan is governed by New York state law.  Complaint ¶ 8 (asserting New York law applies to the claims against the GUL Plan benefit); Craig Jacques's Answer ¶ 1 (admitting MetLife's allegation in the Complaint ¶ 8); Anne Jacques's Answer ¶ 2 (denying knowledge sufficient to form a belief as to Complaint ¶ 8's allegation); Defendant Craig Jacques's  Memorandum at 4 (acknowledging that Kodak Life Plan governed by ERISA); Defendant Anne Jacques's Memorandum at 6 (stating, generally, that "[t]here is no disagreement with the movant [Craig] regarding the applicability or substance of applicable federal common law.") (bracketed material added).

Under ERISA, where a dispute arises over entitlement to a plan participant's life insurance proceeds because of an alleged failure by the participant to change the designated beneficiary on the participant's life insurance policy, courts apply the doctrine of substantial compliance to give effect to the participant insured's intent.  *See American Int'l Life Assurance Co. v. Vazquez,* 2003 WL 548738 *5 (S.D.N.Y. Feb. 25, 2003) (citing *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994); *Conn. Gen. Life Ins. Co. v. Mitchell,* 1995 WL 469714 *7 (S.D.N.Y. Aug. 8, 1995); *McCarthy v. Aetna Life Ins.,* 704 N.E. 2d 557, 560 (N.Y. 1998)).  "Under the doctrine, 'an insured substantially complies with the change of beneficiary provisions (of the ERISA plan) when the insured: (1) evidences his intent to make the change and (2) attempts to effectuate the change undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.'" *Vazquez,* 2003 WL 548738, at *5 (quoting *Adams*, 30 F.3d at 564).  *See also Hartford Life Ins. Co. v. Einhorn*, 497 F.Supp.2d 398, 401 (S.D.N.Y. 2007); *Mitchell,*

1995 WL 469714 at  *8.  The test is the same under New York law for determination of conflicting claims to life insurance benefits under insurance policies not governed by ERISA and related federal common law.  *See McCarthy,* 704 N.E.2d at 560 (substantial compliance with the policy's change of beneficiary designation under New York law requires insured to intend to change the beneficiary and take affirmative steps to effectuate that change); *see also William Penn Life Ins. Co. of N.Y. v. Viscuso,* 569 F.Supp.2d 355, 364 (S.D.N.Y. 2008) (insurer bringing interpleader waives strict compliance with change of beneficiary requirements of insurance policy (citing cases)); *McCarthy*, 704 N.E.2d at 442 (same).

Here, the record supports a finding that Steven substantially manifested his intent to substitute Anne for Craig as his co-beneficiary on both the Basic Life Plan and GUL Plan.  As well, the court finds that Steven took affirmative steps to effect such changes, in accordance with Kodak's requirements to make such changes in beneficiaries effective under the terms of the plan.  Evidence in the record also demonstrates, sufficiently for a disposition of this interpleader action, that any absence from Kodak's records of the completed change of beneficiary form, which the Kodak PRIDE system indicates unequivocally was received from Steven in 1995 following his request to Kodak, is the result of an unexplained administrative record-keeping error or omission by Kodak, insufficient to negate a finding that Steven both requested a change of beneficiary form to effect such change in his beneficiaries and, in fact, forwarded to Kodak the completed form for processing.  Based on the evidence submitted by Anne and Craig, the court further finds there is no material issue of fact requiring trial on the question of Steven's intent or whether Steven took sufficient affirmative steps to effect

the intended change necessary to meet the requirements of the substantial compliance test under ERISA and New York law.  Accordingly, the court finds that Craig's motion for summary judgment should be DENIED, and summary judgment should be GRANTED to Anne, *sua sponte*.

Several items of undisputed probative evidence support these conclusions.  First, in 1995, following his marriage to Anne in 1994, Steven telephoned or wrote a letter to Kodak to request the change of beneficiary form, a communication in which Steven expressed his desire to substitute Anne, his new wife, instead of Craig, as co-beneficiary for both of Steven's Kodak employee insurance policies.  Irvine Deposition at 27, 29, 30-31, 63.  Consistent with Kodak's change of insurance beneficiary policies and procedure, a Kodak employee benefits representative entered Steven's request in the Kodak employee benefits computer record, the PRIDE system, with the computerized notation that the request was then "pending," *i.e.*, that the intended change was not effective until the change of beneficiary form, which Kodak routinely sends to the employee following such a request, was completed by Steven and returned to Kodak for processing.  *Id.* at 14, 50-51, 55, 64.  Such notation in the PRIDE system indicated that a Kodak employee benefits staff member received Steven's telephone or written request.  *Id.* at 42.  Kodak's standard procedure at the time of Steven's 1995 request was to remove the "pending" notation from the employee's PRIDE system benefits record upon receipt of a completed change of beneficiary form and signed by the employer, thereby effecting the employee's change of beneficiary designation request.  Irvine Deposition at 18, 19. 21-22, 37.

Although, in 1995, it was technically possible for the "pending" notation on the

PRIDE system to be removed without Kodak's actual receipt of the change of

beneficiary form, *id.* at 59-60, Craig points to no evidence suggesting that such a

deviation from Kodak's standard procedure occurred in Steven's file with respect to the

1995 requested change, and, a finding to this effect, adverse to Anne's claim, would

therefore be improperly speculative.  *Goenaga*, 51 F.3d at 18-19 (summary judgment

cannot be avoided based on speculation and a deponent's asserted lack of personal

knowledge of a particular fact cannot be used to support movant's claims).  Here, it is

undisputed that Steven's intended changes, *i.e.*, to delete Craig and substitute Anne as

primary co-beneficiaries on the policies, were noted in the PRIDE system by a Kodak

staff member who had received Steven's telephone or letter request.  Irvine Deposition

at 50-51.  As of the date of Steven's death in 2005, the PRIDE system indicated that (1)

Steven's change of beneficiary request was, as of July 13, 1995, no longer "pending,"

Defendant Craig Jacques's Exh. C; Irvine Deposition at 51, 56-57, and (2) Anne and

Brian were the co-beneficiaries of Steven's life insurance benefits under the policies,

Defendant Craig Jacques's Exh. C; Irvine Deposition at 43, 47.  However, a roll and

frame number as listed in the PRIDE system for the microfiche record where a copy of

Steven's change of beneficiary form should have been located, reflected Steven's

beneficiaries, Craig and Brian Jacques, as originally designated by Steven in 1992 as

primary co-beneficiaries on Steven's Kodak life insurance policies, but not the

completed change of beneficiary form which Steven had requested in 1995 and,

according to the PRIDE system entries, had been received and processed by Kodak.

Irvine Deposition at 20.

Additionally, at the time that Kodak received, in 1995, Steven's request to change

beneficiaries, his marriage to Anne was intact.  Craig Jacques's Deposition at 92.

Moreover, in 1992, when Steven designated Craig as co-beneficiary, Steven was

unmarried and expected Craig to use the insurance benefit to care for Brian in the event

of Steven's death.  Craig Jacques's Deposition at 85.  However, in 1994, Steven

married Anne with the intent of having children with her, *id.* at 96, and therefore as of

1995, when Steven requested the change of beneficiary form, it is reasonable to infer

that Steven's intent, as recorded in the PRIDE system, was to substitute Anne for Craig

for one-half of Steven's life insurance benefits because Steven was then no longer

unmarried and in no need to rely solely on his brother Craig to care for Steven's son

Brian, while Brian was a minor, in the event of Steven's premature death.  Further,

because Brian continued as of 1995 to be protected as Steven's undisputed co-

beneficiary, it is more reasonable to infer that, in 1995, following his then recent

marriage to Anne, Steven wished to provide protection for Anne, and any children

Steven then expected to have with Anne, with the other one-half of the policies'

benefits.  Significantly, Craig points to no evidence, including his own testimony, that

could cause a reasonable juror to find otherwise.

Although in searching its records, Kodak failed to produce the original change of

beneficiary form which the PRIDE system's entries indicated were in fact sent to Steven

and later received by Kodak for processing, neither the inconsistent microfiche record

nor the failure to locate such form does not bar a finding that the insured substantially

complied, as a matter of law, with the carrier's change of beneficiary requirements.  *See*

*Connecticut General Life Insurance Co.,* 668 F.2d 325, 327-28 (7th Cir. 1982) (insured

who completed change of beneficiary form but died before mailing it substantially

complied with insurance contract despite provision that required insured to file form with

employer); *Cipriani v. Sun Life Ins. Co. of America,* 757 F.2d 78, 81-82 (3d Cir. 1985)

(where insured completed and submitted, but where parties stipulated that the insurer,

Sun Life, lost change of beneficiary form, insured, nevertheless, substantially complied

with terms of policy)*; Cable v. Prudential Life Ins. Co.*, 453 N.Y.S.2d 86, 87-88 (3d

Dep't. 1982) (insured who told agent for insurance company the day before insured was

killed in automobile accident insured would mail policy to insurance company for

endorsement but failed to do so did everything possible to change beneficiary); *Phoenix*

*Mut. Life Ins. Co.,* 30 F.3d at 568 (substantial compliance found where insured

expressed intent to change beneficiaries but employee erred in processing form partially

filled out by the insured); *see also Coomer v. United States*, 471 F.2d 1 (5th Cir. 1973)

(in a dispute between a serviceman's father and the serviceman's widow to recover

proceeds of decedent-serviceman's group life insurance policy, court found Navy

received the designation of beneficiary form despite the fact that it was not located in

the Navy's file). *Cf. Vasquez,* 2003 WL 548738 at * 6 (no substantial compliance with

change of beneficiary provision in life insurance policy where decedent expressed an

intent to change beneficiaries but took no affirmative steps beyond obtaining change of

beneficiary form).  Thus, Kodak's failure to locate Steven's 1995 change of beneficiary

form does not prevent a finding that Steven nevertheless substantially complied with the

change of beneficiary requirements of the policies.

   While there is no federal caselaw regarding an insurer's failure to locate an

insured's change of beneficiary form under a life insurance plan governed by ERISA

where other indications that the insured submitted a properly executed form are

present, given the court's authority based on ERISA to develop a "federal common law of rights under ERISA-regulated plans," *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 110-11 (1989), and based on the foregoing relevant federal and state caselaw, the court finds that where, as in the instant case, the insured's intent has been unambiguously established and there is evidence that the insured submitted a completed change of beneficiary form, as required by the policies, but where the administrator or insurer failed to locate a change of beneficiary designation form, the insured has substantially complied with the change of beneficiary provision of the policies.  Accordingly, the court finds, as a matter of federal common law, as to Steven's Life Plan benefits covered under ERISA, where, as here, there is no material issue of fact regarding Steven's expressed intent to change beneficiaries, and the records regularly maintained by the employer Kodak reflect such change was effected constituting evidence that Steven took positive steps to comply with the policies' requirements for changing beneficiaries, but where the actual change in beneficiary form cannot be located, that Steven, as the insured, substantially complied with the policies' provision for changing beneficiaries in an ERISA plan.

The court applies New York law to determine Defendants' entitlement to benefits under the GUL Plan which the parties concede is not subject to ERISA.  Under New York law, when an insured has demonstrated his intent to change beneficiaries on a life insurance policy and has done everything in his power to effectuate such change, the change is deemed effective.  *McCarthy,* 704 N.E. 2d at 560 (insured who intends to change beneficiaries and makes "every reasonable effort" to comply with terms of policy substantially complies with the terms of the policy); *Cable*, 453 N.Y.S.2d at 88 (where

"insured did all that was possible to effectuate the change of beneficiary," court found change occurred); *Aetna Life Ins. Co. v. Carney*, 9 N.Y.S.2d 59, 61 (N.Y. Sup. 1939) (same). Here, Steven requested a change in beneficiary designation form as to the GUL Plan from Kodak and returned a properly completed form to Kodak, which is reflected in Kodak's PRIDE computer system, despite Kodak's apparent misplacement of the hardcopy following its receipt. No evidence presented by Craig raises a material issue of fact concerning these essential facts.

As discussed, Discussion, *supra,* at 18-20, the undisputed facts support a finding that Steven, in 1995, did, in fact, submit the completed change of beneficiary form designating Anne and Brian as his co-beneficiaries, which he had requested to Kodak for processing as evidenced by the record, confirmed by a contemporaneously created notation to this effect in the PRIDE system, and that as a result of an unexplained internal administrative lapse, the form was mislaid, misfiled, or lost by Kodak. On this record, under the substantial test applicable to the competing claims, Steven's change of beneficiaries to Anne and Brian was effective, and therefore Craig's motion should be DENIED.

Further, summary judgment awarding one-half of the benefits under the Basic Life Plan and GUL Plan should be GRANTED to Anne, *sua sponte*. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). "Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a *sua sponte* grant of

summary judgment may be appropriate if those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114-115 (2d Cir. 1999) (quoting *Ramsey v. Coughlin*, 94 F.3d 71, 74 (2d Cir. 1996)).

In *Ramsey*, *supra*, the Second Circuit reversed the District Court's *sua sponte* award of summary judgment to non-moving defendants because although discovery had been completed, it was unclear to the appellate court whether all relevant discovery material was before the district court.[4]  *Ramsey*, 94 F.3d at 74.  In *First Fin. Ins. Co.*, *supra*, the District Court's award of summary judgment, *sua sponte*, was reversed because the underlying motion was a motion to dismiss certain counterclaims.  *First Fin. Ins. Co.*, 193 F.3d at 115.  According to the court, "the procedural safeguards that should attend an award of summary judgment were not offered to Appellants" because the district court did not advise the parties that it was converting the motion to a summary judgment motion on the underlying claim and, consequently, the parties had "no opportunity to supplement the record with evidence that might create an issue of fact."  *First Fin. Ins. Co.*, 193 F.3d at 115.  "The very intimation of mortality when summary judgment is at issue assures us that the motion will be rebutted with every factual and legal argument available."  *Id.* at 115-116.

Here, the underlying motion by Craig is one for summary judgment in his favor, thus the parties, unlike the parties in *First Fin. Ins. Co., supra*, were on notice that a decision on the merits is sought, and have submitted their respective motion papers

---

[4] The record consisted of Ramsey's motion for summary judgment, a memorandum of law in support of his motion, and a purportedly undisputed statement of material facts.

which address the merits of the case.  These filings include Craig's motion for summary

judgment and memorandum of law in support, which contains Craig's statement of

facts, a copy of the relevant provision of the life insurance policies at issue permitting

Kodak employees to change designated life insurance beneficiaries, Defendant Craig

Jacques's Exh. A,  the microfiche form designating Craig and Brian Jacques as

beneficiaries, Defendant Craig Jacques's Exh. B, PRIDE system screen print-out

designating Anne and Brian as co-beneficiaries, Defendant Craig Jacques's Exh. C,

computer print-outs of the relevant beneficiary designee screens from the Kodak PRIDE

system reflecting contemporaneous data entries, Defendant Craig Jacques's Exh. C,

and the depositions of Deidre Irvine, John Littwitz, Craig and Anne Jacques, Defendant

Craig Jacques's Exh. D.  Anne, also has submitted a memorandum in opposition to

Craig Jacques's summary judgment motion, in which she argues against granting the

motion but does not contend that further discovery is needed nor that a trial on the

merits is required.  As such, neither side provides any reason to find that further

discovery could yield relevant admissible evidence in further support of their conflicting

claims at trial.  Indeed, according to the Second Amended Scheduling Order entered for

the case (Doc. No. 22), fact discovery was required to be completed by September 14,

2007.  On this record, where all relevant evidentiary material has been presented to the

court, a *sua sponte* motion for summary judgment in favor of the non-moving defendant

claimant, Anne, is therefore within the court's discretion.  *Ramsey*, 94 F.3d at 74 (where

discovery is complete, all pertinent discovery materials are before the court and there is

no evidence that further discovery would benefit the parties, court may enter judgment,

*sua sponte)*.  Moreover, because discovery is complete, any additional notice to Craig

27

advising of the court's decision to grant summary judgment to Anne on this record, *sua sponte*, would be futile.  As the court in *Ramsey* stated, "The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment."  *Ramsey,* 94 F.3d at 74.

The final factor the court must consider before awarding summary judgment, *sua sponte,* is whether there are any material issues of fact outstanding.  Craig, while questioning Irvine's ability to personally attest to the procedures relative to changing an insured's designated beneficiary in place at Kodak in 1995 and, specifically, Irvine's testimony that the "pending" designation of life insurance beneficiaries, reflected in the PRIDE system, cannot be changed until the beneficiary designation form has been received by Kodak, fails to create a material issue of fact in dispute on this issue.  Specifically, Craig does not submit any evidence to rebut Irvine's testimony that the PRIDE system was in effect in 1995, Irvine Deposition at 50-53, or which suggests that the process of changing designated beneficiaries using the PRIDE system was different in 1995 than in 2000 as Irvine described it in her testimony.  *Id.* at 50-55.  Instead, Littwitz, who in 1995 worked as a benefits specialist for Kodak, testified he was unaware of any changes made to the Kodak administration of claims process from 1995 through 2005.  Littwitz Deposition at 66, 76.  Although Newton, Craig's attorney, inquired as to the name of the benefits specialist was who would have processed Steven's 1995 request to change beneficiaries, Newton did not pursue this inquiry or attempt to locate and depose any such individual.  Irvine Deposition at 52-53.  Again, as noted, by seeking summary judgment awarding him the benefits under the policies, Craig has conceded the record is insufficient to grant him the relief requested as a matter of law.

28

As such, he has no basis to object to a converse award to Anne without trial.

In any event, assuming, *arguendo*, that the specifics of the process Kodak utilized in 1995 to change an insured's beneficiaries could be viewed as presenting a material issue of fact, "[e]ven when material facts are in dispute . . . summary adjudication may be appropriate if, with all factual inferences drawn in favor of the nonmovant, the movant would nonetheless be entitled to judgment as a matter of law." *Young v. Dental Mfg. Co., Inc. v. Q3 Special Prods., Inc.,* 112 F.3d 1137, 1141 (Fed.Cir. 1997) (underlining added).  Thus, inferences regarding disputed facts in this case must be drawn in favor of Anne, the non-movant, *Beard v. Banks*, 548 U.S. 521, 522 (2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)), and Craig's assertion that procedures in effect in 1995 may have been different in some relevant way than the procedures in 2000 familiar to Irvine amounts to conjecture, or "metaphysical doubt," insufficient to prevent a finding of summary judgment in Anne's favor.  *Halpern v. F.B.I.*, 181 F.3d 279, 287 (2d Cir. 1999) ("Metaphysical doubt, conjecture, or surmise cannot establish such dispute and defeat the motion."); *L.A. Limousine, Inc., v. Liberty Mut. Ins. Co.,* 578 F.Supp.2d 379, 383 (D.Conn. 2008) (party opposing summary judgment "cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture" . . . or "rely on conclusory statements or unsupported allegations that the evidence in support of a motion for summary judgment is not credible") (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993));  *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1036 (8th Cir. 2005) ("Evidence, not contentions, avoids summary judgment.")

Thus, because discovery in this case is complete, *Ramsey*, 94 F.3d at 74

(requiring that discovery be complete or that "further discovery would be of no benefit"),

the parties expected a potential ruling on the merits, and there are no material issues of

fact regarding whether Kodak received Steven's change of beneficiary form in 1995

designating Anne and Brian as the new primary, co-beneficiaries in the Basic Life Plan

and GUL Plan insurance policies, this court finds that summary judgment in favor of the

non-movant, Anne Jacques, awarding her a one-half share of Steven's death benefit

under the Kodak Basic Life Plan and GUL Plan, should be GRANTED, *sua sponte*.


C.    The Parties' Requests for Attorneys' Fees and Costs

As stated, Background, *supra*, at 3, MetLife has requested an award of costs,

disbursements and attorneys' fees reasonably incurred in bringing this interpleader

action, Complaint ¶ 26, while Craig, in his Answer, Counterclaim and Cross-Claim,

requested that the court deny MetLife its request for attorneys' fees, but grant Craig an

award of attorneys' fees.  Craig Jacques's Answer at 4. Defendant Anne Jacques, in her

Answer, also requests costs and disbursements.  Defendant Anne Jacques's Answer at

2.

Courts have awarded costs and attorneys' fees to stakeholders like MetLife in

interpleader actions where "the stakeholder : 1) is disinterested; 2) has conceded

liability; 3) has deposited the disputed funds into the court; and 4) has sought a

discharge from liability."  *Crosky v. Ford Motor Co.*, 2002 WL 974827, at * 9 (S.D.N.Y.

May 6, 2002).  Awarding attorneys' fees in an interpleader action is left to "the sound

discretion of the court."   *Travelers Indemnity Co. v. Israel*, 354 F.2d 488, 490 (2d Cir.

1965) (citing 28 U.S.C. § 1335, "the Interpleader statute")).  However, the Second

Circuit, in *Israel, supra,* found that insurers may not, "as a matter of course, transfer a

part of their ordinary cost of doing business of their insureds by bringing an action for

interpleader."  *Israel*, 354 F.2d at 490.  "An award of attorneys' fees to an insurer is

appropriate only when the expense incurred for the interpleader action exceeded the

ordinary cost of doing business."  *Commercial Union Life Ins. Co. of N.Y.  v. Almonor,*

1999 WL 292562, at * 1 (S.D.N.Y. May 7, 1999) (citing *Israel*, 354 F.2d at 490).  The

Southern District, in *Crosky, supra*, further noted that

> [c]onflicting claims to the proceeds of a policy are inevitable
> and normal risks of the insurance business.  Interpleader
> relieves the insurance company of multiple suits and
> eventuates in its discharge.  Accordingly, [such actions are]
> brought primarily in the company's own self-interest.

*Crosky, supra*, at 9 (quoting *Companion Life Ins. Co. v. Schaffer*, 442 F.Supp. 8826,

830 (S.D.N.Y. 1977)).  Here, other than its generalized request, MetLife makes no

specific assertion that its expenses in bringing the instant action "exceeded the ordinary

costs of doing business."  *Almonor*, 1999 WL 292562 at *1.

Because life insurance companies are, in some instances, required to bring

interpleader actions, such actions are part of the industry's ordinary cost of doing

business and are not usually recoverable.  *Almonor*, 1999 WL 292562 at * 1 (S.D.N.Y.

May 7, 1999); *see also Marvin E. Herman, Inc. v. White*, 1993 WL 362405, at *2-3

(S.D.N.Y. Sep't. 13, 1993)  (attorney's fees and costs are ordinary expenses for insurer

and, therefore, should not be awarded); *Minn. Mut. Life Ins. Co. v. Gustafsen*, 415

F.Supp. 615, 618-19 (N.D.Ill. 1976) (insurance company, which is the actual beneficiary

of interpleader action, "should pay the costs of relieving it of its liability to the proper

claimants."). Because MetLife has not asserted, or demonstrated, that the costs of this interpleader action "have exceeded the ordinary cost of doing business," *Almonor, supra*, MetLife's request for attorneys' fees should be DENIED.

As Craig's summary judgment motion has not contributed to preserving the benefits at issue, in the court's discretion, Craig's request for attorneys' fees against MetLife should also be DENIED. *Israel*, 354 F.2d at 490 (decision to award attorneys' fees in interpleader action is within sound discretion of the court). Moreover, as Anne's claim is meritorious, no ground exists for an award of Craig's costs against Anne. *See Global Indem. Co. v. Puget Sound Co., Inc.*, 154 F.2d 249, 250 (2d Cir. 1946) (costs of interpleader awardable against party whose "groundless" claim necessitated interpleader); *Nat'l Basketball Ass'n v. Nat'l Assoc. of Basketball Referees*, 644 F.Supp. 342, 344 (S.D.N.Y. 1986) (costs of interpleader action may be taxed against defendant claimant where defendant "advances arguments which have no justification in law or fact"). *See generally* AM. JUR. 2D INTERPLEADER § 75 (2009 Thomson Reuters/West) (citing caselaw) (successful interpleader claimant expected to bears its proportionate share of attorneys fees and related expenses where claimant benefitted from interpleader action). Finally, although an award of costs and fees may be granted to a successful claimant where the unsuccessful claimant asserted a baseless claim necessitating the interpleader action, CORPUS JURIS SECUNDUM INTERPLEADER § 48 (2009 Thomson Reuters/West) (citing caselaw), Anne makes no such claims against Craig in light of Craig's allegations and arguments in support of his motion. Moreover, until Craig had the benefit of discovery, he may have been unaware of the ground for awarding disputed benefits based on the substantial compliance test.

## CONCLUSION

Based on the foregoing, Defendant Craig Jacques's motion for summary judgment (Doc. No. 25) should be DENIED; summary judgment in favor of Defendant Anne Jacques should be GRANTED *sua sponte*; MetLife's, Defendant Craig Jacques's, and Anne Jacques's requests for costs and attorneys' fees should be DENIED.  The Clerk of Court should be directed to pay Anne Jacques the balance in the court's account relating to this action together with any accumulated interest, and close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATE MAGISTRATE JUDGE

Dated: February 24, 2009
      Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        February 24, 2009
                    Buffalo, New York